<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARGARET S.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>KILOLO KIJAKAZI,[1]<br>ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | Civil Action No. 21-13556 (SDW)<br><br>**OPINION**<br><br>July 14, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Margaret S.'s ("Plaintiff")[2] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Kenneth Ayers' ("ALJ Ayers") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Ayers' factual findings

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted, therefore, for Andrew Saul as the defendant in this suit.

[2] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

I. <u>**PROCEDURAL AND FACTUAL HISTORY**</u>

    A. **Procedural History**

Plaintiff filed for DIB on June 27, 2018, alleging disability beginning on November 19, 2017, due to eosinophilic pneumonia, cervical and lumbar spine disorder, osteoarthritis of the bilateral hands, polymyositis, insomnia, and right shoulder internal derangement. (D.E. 5 (Administrative Record ("R.")) at 64, 190, 211–21, 222.) The state agency denied Plaintiff's applications at the initial and reconsideration levels. (R. 84–88, 91–92.) Plaintiff received a telephone hearing before ALJ Ayers on July 10, 2020, and the ALJ issued a written decision on August 5, 2020, finding that Plaintiff was not disabled. (R. 26–62, 9–25.) The Appeals Council denied review on May 21, 2021, and Plaintiff subsequently filed the instant appeal in this Court. (R. 1–6; D.E. 8-1.) The parties timely completed briefing. (D.E. 9; 10.)

    B. **Factual History**

Plaintiff is sixty-five years old and has a high school education with one-year vocational training as an executive secretary. (*See* R. 34–35, 74.) She previously worked as an on-site billing manager, which is sedentary work. (R. 36, 53.) The following is a summary of the medical evidence in the record.

    i. <u>Dr. Edward Dwyer, M.D.</u>

Since May 2014, Plaintiff sought care from Dr. Edward Dwyer, M.D., until November 2016. (R. 296–314.) During the consultations, Plaintiff reported shortness of breath, fatigue and pain in her muscles and fingers. (R. 296, 301, 304.) She did not exhibit any other significant respiratory, neurological, cardiovascular, or musculoskeletal symptoms. (R. 297, 305, 309, 313.)

Plaintiff's physical examinations displayed a normal range of motion, normal rhythm and regular heart rate, and no respiratory distress. (R. 297–98, 309, 313.) While Plaintiff's most recent musculoskeletal examination delineated Heberden's nodes in her fingers, Plaintiff exhibited normal range of motion and her joints did not display any other swelling, tenderness, erythema, or warmth. (R. 298, 309, 313.)

ii. Dr. Robert M. Palacios, M.D.

In May 2017, Plaintiff saw Dr. Robert M. Palacios, M.D., at New Jersey Orthopedic Institute, alleging burning pain to her right shoulder and right arm that lasted three months. (R. 386.) During the examination, Plaintiff displayed normal pulses, sensation, reflexes, and strength, with a slight limitation to shoulder motion. (R. 386–87.) An X-ray of the cervical spine displayed narrowing at C5-C6, but the right shoulders did not exhibit any gross acute abnormalities. (R. 387.) A subsequent Magnetic Resonance Imaging ("MRI") of Plaintiff's shoulder revealed a full-thickness supraspinatus tear anterolaterally and bursitis. (R. 392.) Dr. Palacios pursued conservative treatment along with physical therapy to manage Plaintiff's conditions. (*Id.*)

In May 2018[3], Plaintiff returned to Dr. Palacios for complaints of sudden low back pain, which was aggravated by bending, lifting, standing, and walking. (R. 389–91.) Plaintiff reported that the pain began when she was "lifting heavy furniture". (R. 390.) Physical examination showed, *inter alia*, a negative straight leg raising test, normal gait, and strength fully intact for all extremities. (R. 390–91.) Dr. Palacios diagnosed Plaintiff with L3 compression fracture,

---

[3] Prior to her return visit with Dr. Palacios, in April 2018, Plaintiff visited Dr. Christopher Irobunda, M.D. for a cardiology examination. Plaintiff exhibited regular cardiovascular rhythm and heart rate, with no edema in all extremities. (R. 350–51.) Dr. Irobunda found Plaintiff to be in a clinically stable position from a cardiac standpoint. (R. 351.)

prescribed hydrocodone, and recommended that Plaintiff rest, use a back brace, and curtail activities. (*Id.*)

iii. Dr. Roger Maxfield, M.D.

From April 2016 to December 2017, Plaintiff saw Dr. Roger Maxfield, M.D., for evaluations. (R. 330–48.) Plaintiff's April 2017 spirometry examination delineated no airflow obstruction, normal lung volumes, and mildly reduced diffusing capacity. (R. 407.) Subsequently at an examination in December 2017, Dr. Maxfield observed that Plaintiff's breathing was stable. (R. 331.)[4]

iv. Dr. Alexander Hoffman, M.D.

In October 2018, Plaintiff underwent a consultative examination with Dr. Alexander Hoffman, M.D. (R. 414–19.) Upon physical examination, Plaintiff had normal gait, no edema, and a straight leg raise ranging from 60 to 65 degrees. (R. 415.) While Plaintiff had some tenderness in the shoulder region and decreased range of motion, Dr. Hoffman did not identify any discrete swelling of the metacarpophalangeal or interphalangeal joints. (*Id.*) Plaintiff was able to bend her knee halfway and 60 degrees at the waist but had difficulty walking on heel or toe. (*Id.*)

v. State Agency Medical Consultants

In October 2018, a state agency medical consultant, Dr. Mohamed Abbassi, M.D., reviewed Plaintiff's records. (R. 63–72.) Dr. Abbassi indicated that, while there was insufficient evidence to evaluate the claim, Plaintiff was not disabled given the record. (R. 69–71.) He noted her ability to "bathe and dress herself", to perform "minimal chores" and "drive locally." (R. 70.) Dr. Abbassi further opined that Plaintiff has a residual functional capacity ("RFC") of light work with certain limitations. (R. 67–72.) Dr. Nancy Simpkins, M.D., affirmed the functional analysis

---

[4] In December 2018 and July 2019 Plaintiff was diagnosed with acute bronchitis, the first diagnosis stemming from a hospitalization. (R. 603–05, 613–14.) Plaintiff recovered after receiving prescriptions. (*Id.*)

4

in February 2019 and determined that Plaintiff was not disabled based on the documented findings. (R. 74–82.)

  **C.**  **Hearing Testimony**

At the telephonic administrative hearing on July 10, 2020, Plaintiff was represented by counsel. (R. 26.) ALJ Ayers heard testimony from Plaintiff and Andrew Vaughn, an impartial vocational expert. (R. 26, 52.)

Plaintiff testified that she worked as an on-site billing manager prior to 2005. (R. 36.) Upon being diagnosed with eosinophilic pneumonia, Plaintiff worked from home at her own pace with flexible hours. (R. 32, 39.) Plaintiff stopped working in 2017 because the new employer no longer accommodated working from home. (R. 40.) Plaintiff stated that she was not able to work due to, *inter alia*, fatigue, pneumonia, fibroids inside the lungs, insomnia, and muscle cramps. (R. 41–42.) Plaintiff claimed that she experiences hypersensitivity and weakness in the fingers on a daily basis and that she must move or change position usually about every 20 minutes. (R. 43, 47.) Consequently, Plaintiff testified that her husband handles the cooking; she can do limited laundry chores; and she can drive locally. (R. 44, 45.) Plaintiff further testified that her family moved to a condo because her old house was "too much with stairs." (R. 49–50.)

VE Vaughn testified that an individual with Plaintiff's vocational background and RFC, as assessed by ALJ Ayers, would be capable of working Plaintiff's previous job as a supervisor accounting clerk. (R. 53.) In response to a question asked by Plaintiff's attorney, VE Vaughn stated that the amount of keyboarding or corrections that a supervisor would have to do, would not be "more than frequently" considering that the volume of work that the data entry person does is not the same volume of work done by a supervisor reviewing and making corrections. (R. 58–59.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which

6

evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B.**     **The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing

evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

#### A. The ALJ's Decision

On August 5, 2020, ALJ Ayers issued a decision concluding that Plaintiff was not disabled from November 19, 2017, through the date of the decision. (*See generally* R. 12–21.) At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful employment since November 19, 2017, the alleged onset date. (R. 14.) At step two, he found that Plaintiff had the following severe impairments: eosinophilic pneumonia, cervical and lumbar spine disorder, osteoarthritis of the bilateral hands, polymyositis, insomnia, and right shoulder internal derangement.[5] (*Id.*)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing. (R. 15–16.) In particular, Plaintiff's impairment did not meet the requirements of Listings 1.02, 1.04, 3.02, 3.03, or 14.05 for the reasons set forth below. (*Id.*) First, the ALJ found that Plaintiff's impairments did not meet the requirements of Listing 1.02. (R. 15–16.) For Listing 1.02 a claimant must prove that she meets either the "paragraph A" criteria or "paragraph B" criteria.[6] 20 C.F.R. Pt. 404, Subpt. P,

---

[5] Plaintiff was also diagnosed with hypertension, mild atherosclerotic vascular disease, tinnitus, osteoporosis, dyslipidemia, intermittent heart palpitations, dry eye syndrome, hyperopia, presbyopia, thyroid nodules, rib fracture, a left foot contusion, a fracture of her right great toe, acute costochondritis, and actinic or seborrheic keratosis. (R. 15.) However, because the conditions were medically controlled by recommended treatment and the evidence did not show that the conditions had more than a minimal impact on Plaintiff's ability to perform basic work activities, the ALJ found these impairments to be non-severe. (*Id.*)
[6] Must be "characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging

App. 1 § 1.02. The paragraph A criteria require an involvement of one major peripheral weight-bearing joint that results in inability to effectively ambulate. *See id.* § 1.02(A). The paragraph B criteria require an involvement of one major peripheral joint in each upper extremity that results in inability to effectively perform fine and gross movements. *See id.* § 1.02(B). Based on the record, the ALJ found that Plaintiff's limitations did not meet such conditions. (R. 15–16.) Second, the ALJ found that Plaintiff's back impairments did not meet Listing 1.04 for disorders of the spine. (R. 16.) Specifically, the ALJ found that Plaintiff's medical diagnostic imaging and physical examinations did not show nerve root compression (as required by 1.04A), spinal arachnoiditis (as required by 1.04B), and lumbar spinal stenosis resulting in pseudoclaudication (as required by 1.04C) during the relevant period. (*Id.*) Next, the ALJ found that Plaintiff's pneumonia did not meet the requirements for Listings 3.02 and 3.03 because the record did not demonstrate that Plaintiff's spirometry met required listing levels and did "show chronic impairment of gas exchange or abnormal arterial blood gas values, as required by 3.02C[.]" (*Id.*) In addition, Plaintiff failed to meet the requisite number of hospitalizations required for "listing applicability." (*Id.*) Finally, the severity of Plaintiff's polymyositis did not meet or medically equal the criteria of Listing 14.05 because the record did not evidence that Plaintiff had, *inter alia*, an inability to ambulate or perform gross and fine movements effectively; dysphagia, intercostal or diaphragmatic muscle weakness; diffuse calcinosis with limited motility; and marked limits in daily living, social functioning, or task completion. (*Id.*)

> Assessing Plaintiff's RFC, the ALJ found that Plaintiff could:
>
> [P]erform light work . . . except she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit for up to six hours, and stand/walk for a combined total of four hours in a typical eight-hour workday. She can occasionally reach overhead bilaterally, and frequently reach in all other

---

of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)". 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02.

directions bilaterally. She can handle and finger frequently bilaterally. [She] can climb ramps and stairs occasionally, but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can never work at unprotected heights, or around hazardous moving mechanical parts. She can work in humidity and wetness occasionally, but can never work in dust, odors, fumes, pulmonary irritants, or extremes of cold or heat.

(R. 16.)

At step four, the ALJ found that someone with Plaintiff's RFC could perform Plaintiff's past job as an accounting clerk supervisor. (R. 20.) ALJ Ayers therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 21.)

**B. Analysis**

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See* D.E. 8-1 at 22–23.) Plaintiff asserts that the ALJ (1) failed to properly assess or explain Plaintiff's RFC; (2) failed to complete the record; and (3) exercised improper authority vested by the Commissioner, whose office is constitutionally defective. (*See id.* at 8–22.) This Court considers the arguments in turn and finds each unpersuasive.

**A.**

Plaintiff asserts that the ALJ's RFC assessment was unexplained and unsupported by substantial evidence, alleging that the RFC assessment was based upon the "ALJ's lay opinion." (D.E. 8-1 at 11.) Plaintiff claims that despite the ALJ "finding no opinions persuasive", the ALJ relied upon "most of the RFC found" and concluded that Plaintiff could perform her past work and was not disabled. (*Id.* at 10.) Plaintiff further claims that the ALJ failed to make a connection between the evidence and the conclusion. (*Id.* at 16.) Plaintiff's arguments are unavailing.

When evaluating a Plaintiff's claim, an ALJ considers the persuasiveness of medical opinions and "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's]

12

determination or decision." 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(5). However, "[a]n ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner." *Gantt v. Comm'r Soc. Sec.*, 205 F. Appx. 65, 67 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(e)). "[T]here is [also] no format to which an ALJ must adhere when giving h[is] reasoning so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, Civ. No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Importantly, the Third Circuit has held that an inconsistency between a Plaintiff's daily living activities and a medical opinion is a legitimate basis to discredit the opinion. *See, e.g.*, *Hubert v. Comm'r of Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018); *Russo v. Astrue*, 421 F. App'x 184, 191 (3d Cir. 2011).

Here, in assessing Plaintiff's RFC, the ALJ provided a sufficient narrative discussion of Plaintiff's entire medical record during the alleged period of disability. (R. 16–20.) The ALJ formulated Plaintiff's RFC based on all relevant evidence, including the medical records, medical source opinions, and Plaintiff's subjective complaints and description of her own limitations. (R. 16–20.) The ALJ's RFC was supported by Plaintiff's "largely benign physical examinations, infrequent treatments and complaints, and wholly conservative treatment modalities[.]" (R. 20.) The ALJ fully articulated his considerations of the state agency medical physicians functional assessments and findings that Plaintiff could perform light exertional work. (R. 19–20.) Plaintiff's assertions that the ALJ found "no opinions persuasive" is without merit. (D.E. 8-1 at 10.) The ALJ fully articulated his reasoning for concluding Dr. Hoffman's, Dr. Abassi's, and Dr. Simpkins' findings of reduced or diminished persuasive value, namely because they were either based on a one-time examination or made without the complete record. (R. 18–19.) This Court finds that

there is substantial evidence to support the ALJ's conclusions with respect to the RFC and Plaintiff's lack of a disability under the relevant standards. The ALJ set forth a detailed analysis in determining the RFC, supported by the record.

Further, the ALJ analyzed Plaintiff's subjective complaints and symptoms. (R. 16–20.) "Allegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citation omitted). An ALJ may discount a claimant's allegations about the intensity, persistence, or limiting effects of his symptoms where the evidence does not fully support those allegations, and "need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec*, 229 F. App'x 140, 147 (3d Cir. 2007) (citations omitted); *see also* 20 C.F.R. §§ 404.1529 and 416.929; *see also* Social Security Ruling 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). Plaintiff received infrequent and minimal treatment during the relevant period; "deferred injections and other less conservative treatment modalities[;]" and is on "maintenance drugs[.]" (R. 19–20.) The ALJ noted that Plaintiff's medical treatments were not consistent with those "one would expect for a totally disabled individual." (R. 19.) Despite her limitations, Plaintiff continues to be able to handle a variety of the "activities of daily living" and almost all of Plaintiff's impairments "had already been diagnosed and treated while she was still performing [her prior] work." (R. 19.) In this matter, the ALJ explained that the alleged "intensity, persistence and limiting effects" of Plaintiff's symptoms were not entirely consistent with the objective medical evidence. (R. 19.) Accordingly, the ALJ properly evaluated Plaintiff's RFC, and the evidence taken as a whole supports the ALJ's decision.

**B.**

Second, Plaintiff alleges that the ALJ failed to complete the record. (D.E 8-1 at 16–17.) Plaintiff claims that the current record does not contain a great amount of medical opinion from either examining or treating sources, which warrants remand. (D.E. 8-1 at 17.) However, "it is claimant's burden at all but the last stage of the five-part test to produce evidence . . . an ALJ is not required to engage a medical expert . . . just because claimant contends that those existing but unproduced records would contradict other medical reports already on the record." *Hollis v. Comm'r of Soc. Sec.*, 116 F. App'x. 396, 399 (3d Cir. 2004); *see also Diaz v. Comm'r of Soc. Sec.*, Civil Action No. 09–6471, 2010 WL 3943707 (D.N.J. Oct. 6, 2010) (Plaintiff's argument that the ALJ failed to complete the record is rejected because Plaintiff failed to articulate how the omitted record would have had a material impact on the determination).

Here, Plaintiff has pointed to no medical evidence that was overlooked concerning Plaintiff's functional limitations to support her position that the ALJ failed to complete the record. (D.E. 9-1 at 23, 26.) In support of her position, Plaintiff points to Dr. Abbassi's report stating that there was insufficient evidence to properly evaluate Plaintiff's condition. (R. 68–69.) Plaintiff's position is unavailing. As set forth at length above, the ALJ relied on a plethora of medical records including Plaintiff's subjective complaints to assess Plaintiff's RFC. (*See generally* R. 63–710.) Significantly, at the telephonic hearing, Plaintiff's attorney acknowledged that the produced record was "complete." (R. 31.) Clearly, the ALJ did not fail to complete the record. The ALJ's factual findings were supported by substantial credible evidence in the record and his legal determinations were correct.

To the extent Plaintiff argues that the medical records relied upon by the ALJ to support his findings were in error, Plaintiff's argument fails. (D.E 8-1 at 16–17.) "[C]ourts are not

permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r. of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Plaintiff may point to evidence that supports a different conclusion, but "[t]he ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz*, 244 F. App'x. at 479 (citation omitted). In this matter, Plaintiff has pointed to no such evidence. The ALJ's findings were fully supported by the medical evidence in the record.

## C.

Finally, Plaintiff asserts that the ALJ's decision must be remanded on constitutional grounds, specifically that the removal restriction allegedly applicable to the former Commissioner who appointed the ALJ was constitutionally defective because it violated the separation of powers clause. (D.E. 8-1 at 17–21.) Because "[t]he ALJ and Appeals Council judges here adjudicated [Plaintiff's claim] under the delegated authority of a Commissioner who had no constitutionally valid legal authority to delegate", Plaintiff argues that a remand is required. (D.E. 8-1 at 18.)

Recently, in *Collins v. Yellen*, 141 S. Ct. 1761, 1770–1777, 1783–1789 (2021), the United States Supreme Court addressed a challenge similar to the one at bar, which alleged that the leadership structure of the Federal Housing Finance Agency (FHFA) was unconstitutional because its sole director was removable by the President only for cause. While the Supreme Court found the removal provision unconstitutional, the Supreme Court expressly set the parameters for relief. *Id.* at 1783–1789. The Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused her alleged "compensable harm." *Id.* at 1787–1789. In *Collins*, the Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the statutorily prescribed method of appointment to that

16

office" and that "the unlawfulness of [a] removal provision does not strip [an official] of the power to undertake the other responsibilities of his office[.]" *Id.* at 1787, 1788 n. 23. The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void." *Id.* at 1787.

In this case, Plaintiff, as in *Collins*, primarily focuses her constitutional challenge only on the relevant removal restriction, not on the propriety of the Commissioner's appointment, and offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of her application for disability benefits. The Plaintiff simply argues that all actions taken by the Commissioner—and in turn his appointed ALJ's—are void due to the unconstitutional removal provision. *Collins* expressly rejects this view. (*See generally* D.E. 8-1 at 16–21; D.E. 10 at 5–7.) Plaintiff has offered no evidence demonstrating that 42 U.S.C. § 902(a)(3)'s removal restriction caused the denial of her benefits claim or affected the determination of her benefits in any way. (*Id.*) Instead, Plaintiff, *inter alia*, cites "adverse determinations by the ALJ and the Appeals Council"; that "[Plaintiff]'s constitutional rights were violated in the adjudication of her disability claim"; and that Plaintiff "never received the constitutionally valid adjudication process to which she is entitled" as her alleged harm. (D.E. 10 at 7; D.E. 8-1 at 18.) Without more, Plaintiff simply asserts that an unconstitutional statutory removal restriction exists. As such, further consideration from this Court on Plaintiff's "separation of powers" argument is not necessary. Accordingly, the final decision of the ALJ is not constitutionally defective and remand is not warranted.

Therefore, reviewing the ALJ's decision and the medical record as a whole, it is clear that Plaintiff is able to perform a range of light exertional work, as opined by the treating and consultative physicians. Substantial evidence—*i.e.*, more than a mere scintilla of evidence—

supports the ALJ's decision and this Court will therefore affirm.

IV.     **CONCLUSION**

For the foregoing reasons, this Court finds that ALJ Ayers' factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.


                                                s/ *Susan D. Wigenton*
                                                **SUSAN D. WIGENTON**
                                                **UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties